UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| GEORGE R. COURETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:13 CV 68 DDN |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff George R. Coureton for social security income benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401, 1381. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## I. BACKGROUND

Plaintiff was born on July 16, 1971. (Tr. 87.) He filed his application on November 9, 2010, alleging an onset date of September 1, 2010, at age 39, and alleging disability due to degenerative disc disease and lower back problems, anxiety, and depression. (Tr. 16, 152, 177, 182.) His application was denied initially, and he requested a hearing before an ALJ.[1] (Tr. 97, 102.)

---

[1] Plaintiff also applied for disability insurance benefits under Title II of the Act but did not meet the insured status requirements.

On May 31, 2012, following a hearing, the ALJ issued an unfavorable decision. (Tr. 5-21.) The Appeals Council denied plaintiff's request for review. (Tr. 1.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  MEDICAL AND OTHER HISTORY

On August 10, 2010, plaintiff saw Peter Koopman, M.D., his primary care provider (PCP), for a second opinion on pain management options for worsening back pain, specifically, obtaining a TENS unit or electrical stimulator implant.  Dr. Koopman noted a history of chronic back pain.  Plaintiff was also seeing Dr. Alejandro Blachar, a pain management doctor, near his home in Moberly, Missouri.  Plaintiff reported that he had been taking the same dosage of Duragesic and oxycodone, opioids used to treat moderate to severe pain, for a year and a half, and that they were increasingly less effective.  An MRI showed degenerative changes in plaintiff's lumbar spine with foraminal stenosis or narrowing of the cervical disc space from disk bulging.  Plaintiff's most severe recent complaints were muscle spasms.  Upon examination, plaintiff had some tenderness and mild paravertebral muscle spasm in his lower back, but good range of motion (ROM). Dr. Koopman assured plaintiff that his current pain management regimen through his physician in Moberly seemed appropriate. (Tr. 230-31.)

Plaintiff saw Jeffrey M. Tiede, M.D., a pain management doctor, for comprehensive pain management on August 18, 2010 upon referral by Dr. Koopman. Plaintiff reported at least a five year history of back pain with no specific inciting incident. He reported his pain level was 4 on a 10-point scale.  Upon examination, he appeared in no acute distress and displayed no overt pathologic pain behavior during the appointment. His body mass index (BMI) was 32.3.  He transitioned slowly from sitting to standing and his forward flexion was limited to 90 degrees.  He had no tenderness in his low back and no pain with hip motion.  His reflexes were normal.  His straight leg raises, a test done during a physical examination to determine whether a patient with low back pain has an underlying herniated disk, were negative.  He had intact sensation and no strength deficits.

An MRI from June 1, 2010 showed spondylosis or cervical osteoarthritis with minimal spondylolisthesis[2] at the lumbosacral junction. His impression was spondylosis with foraminal compression or narrowing of the cervical disc space. Dr. Tiede believed that plaintiff's pain was mechanical and that his two available options were referral for surgical fusion or diagnostic medial branch blocks. Dr. Tiede referred plaintiff for a surgical fusion consultation but did not think his medications needed to be changed. He stressed the importance of core strengthening exercises. (Tr. 243-45.)

Plaintiff saw Alejandro Blachar, M.D., a pain specialist, at the Center for Pain Management, on September 21, 2010. Plaintiff described his pain level as 3-4/10 and reported that he was doing well on his current pain medication regimen. Upon examination, plaintiff appeared in no apparent distress. Dr. Blachar had prescribed Amrix, a skeletal muscle relaxant, at his last visit but he was unable to afford it. He had intact strength in his arms and legs. Dr. Blachar continued his medications and instructed him to follow up in three months. (Tr. 253-54.)

On October 27, 2010, plaintiff saw Joel Jeffries, M.D., a spinal orthopedic surgeon. Plaintiff reported that physical therapy and steroid injections had provided some, albeit temporary, relief in the past. He rated his pain level as 4-5/10. Plaintiff told Dr. Jeffries that he had applied for disability although he had tried to work on some cars. On a questionnaire form, plaintiff reported he was prevented from lifting heavy weights due to this pain, but that he could lift light to medium weights if they were conveniently positioned. (Tr. 277-81.)

Upon examination, plaintiff appeared in no acute distress. He had a "reasonably normal" gait and could heel walk, toe walk, tandem walk, and perform a single-leg stand without undue difficulty. He had globally and substantially diminished active ROM in his lower back, but no dramatic midline or paraspinous tenderness or muscle spasm. He had full motor strength in his legs, normal reflexes, and intact sensation. A sitting root test,

---

[2] Spondylolisthesis is a condition in which one of the bones of the spine (vertebrae) slips out of place onto the vertebra below it. clevelandclinic.org/disorders/back.../ hic_spondylolisthesis.aspx (last visited June 24, 2014).

used to determine possible sciatic nerve pain, was negative. Dr. Jeffries expressed his concern about the amount of opioids plaintiff was taking and advised him that he would perform surgery only if plaintiff detoxified. Otherwise, Dr. Jeffries believed that his perioperative pain control would be virtually impossible. He instructed plaintiff to exercise and be active as tolerated. (Tr. 278-81.)

Plaintiff saw Dr. Blachar again on December 14, 2010 and described his pain level as 2-3/10. He denied any side effects from his medications and said they provided improved pain relief and helped with functioning. He reported that Dr. Jeffries did not think he was a good candidate for surgery or a spinal stimulator and he was therefore not interested in pursuing further invasive procedures. Plaintiff appeared to be in no apparent distress. He had intact strength in his arms and legs. Dr. Blachar prescribed Requip, for restless leg syndrome, and advised him to follow up in three months. (Tr. 255).

Plaintiff saw Dr. Blachar again on January 11, 2011 and reported his pain level as 2-3/10. His Requip was discontinued due to side effects. Upon examination, plaintiff appeared to be in no apparent distress with normal strength. (Tr. 257.)

On April 5, 2011, plaintiff saw Dr. Blachar. Plaintiff described his pain as an achy sensation, as well as a burning feeling, and rated his back pain as 3/10. He stated that his pain improved with medications, as well as cold and heat, and that physical activity and movement worsened his pain. He denied any new weakness or numbness in his arms or legs. Upon examination, he appeared in no apparent distress and had intact strength in his legs. Dr. Blachar increased plaintiff's medications. (Tr. 304-05.)

Plaintiff saw Dr. Blachar again on June 28, 2011. He reported his pain as 3/10. He reported that his medications provided improved pain relief and functioning and that he did not want anything changed at that time. Upon examination, he appeared to be in no apparent distress and had intact strength. (Tr. 306.)

Plaintiff saw Dr. Blachar on September 20, 2011 and rated his pain as 3/10. Upon exam, he appeared to be in no apparent distress and his strength was intact. Plaintiff asked Dr. Blachar to increase his Duragesic but he was declined. Plaintiff believed that his

current regimen of Duragesic, oxycodone, and Pamelor, an antidepressant, was the best regimen he had had for quite a while. Dr. Blachar thought he was becoming tolerant to the effects of his opioid medications. He prescribed Norflex, an antispasmodic, instead of Flexaril, a muscle relaxant, which plaintiff could not afford. (Tr. 308.)

Plaintiff saw Dr. Blachar again on December 13, 2011. His condition was the same, and he rated his pain as 2/10. Dr. Blachar discontinued the Norflex and prescribed another antispasmodic, Zanaflex. (Tr. 310.)

Plaintiff saw Dr. Koopman on December 8, 2011 for back pain and erectile dysfunction (ED). Upon exam of his back, plaintiff had some tenderness in his lumbar spine, good ROM, except for when bending forward or backward. Dr. Koopman prescribed Cialis, for ED, but declined to prescribe another controlled substance, instructing plaintiff to follow up with his pain management doctor. (Tr. 283.)

On February 23, 2012, Dr. Koopman completed a Medical Assessment of Ability to do Work Related Activities. He opined that plaintiff could not sustain sitting and lifting or carrying, and could stand and walk for at least two hours in an 8-hour workday. He stated plaintiff "constantly" experienced numbness in his arms and legs and that he would need to rest for more than three hours during a normal workday. (Tr. 285.) Dr. Koopman opined that plaintiff's restrictions were severe. He noted that plaintiff had been receiving disability for six years and that he based his responses on plaintiff's self report of his limitations. (Tr. 291-92.)

In February 23, 2012 correspondence, Dr. Koopman reiterated prior correspondence from 2009, stating that plaintiff's current condition remained unchanged. Dr. Koopman stated that he had been plaintiff's PCP since February 2009. Plaintiff's back problems began when he was involved in a motor vehicle accident when he was five years old and he had experienced back pain since that time. Plaintiff had been evaluated in 2004-2005 by different doctors which showed spondylosis and degenerative disc disease. On exam, plaintiff experienced daily pain and paresthesia, an abnormal sensation of the body, such as numbness, tingling, or burning, as well as demonstrable right leg

weakness.  Plaintiff had been to a chiropractor and had received physical therapy and interventional pain treatments.  Plaintiff was prescribed narcotics under the care of Dr. Blachar, a pain management specialist.  In the correspondence, Dr. Koopman noted that Dr. Blachar had previously evaluated and documented plaintiff's physical limitations.  Dr. Koopman opined that plaintiff's physical limitations did exist as stated by Dr. Blachar and were related directly to his known back disease.  He thought that plaintiff's limitations and medications made it "extremely unlikely he would be able to hold any significant employment without significant retraining."  (Tr. 302-03.)

Plaintiff saw Dr. Blachar on March 6, 2012 to ask him to complete disability paperwork.  Plaintiff rated his pain as 3/10 and appeared to be in no apparent distress with intact strength.  (Tr. 312.)  Dr. Blachar completed a Physician's Assessment for Social Security Disability Claim form and a Medical Assessment of Ability to do Work Related Activities form.  He indicated plaintiff was restricted to lifting no more than 10 pounds, as well as no stooping, climbing or balancing.  The recommended or attempted treatment was chronic pharmacological management with pain medications and previous therapeutic injections and physical therapy without good relief.  He indicated that plaintiff would need to rest more than five hours and take multiple breaks in an eight-hour workday.  He believed plaintiff would be absent 3 to 4 times per week or 9 to 12 times per month because of his pain complaints.  Dr. Blachar believed that plaintiff had been significantly restricted from doing a 40-hour work week, even at a sedentary level, because of his pain complaints.  He indicated that plaintiff could stand and walk at least 2 hours in an 8-hour workday and that sustained sitting was not possible.  Plaintiff's pain level was so severe as to interfere with the ability to maintain attention and concentration greater than 15% of the day.  (Tr. 272-73.)

Plaintiff was seen in the emergency room (ER) at Samaritan Hospital on March 19, 2012 for back pain.  He said he needed a chiropractic manipulation, but his chiropractor was deceased and Medicaid would not pay for one.  He walked out of the ER with a slow, limping gait, and declined a wheelchair and medications.  (Tr. 286-87.)

Plaintiff returned to the ER the next day, asking to see an orthopedist for a back manipulation or adjustment. He appeared in no acute distress and walked without difficulty. He stated he felt a little better than the day before and did not want medication. Upon exam, he had no tenderness in his back, normal ROM, normal strength, and normal sensation. Plaintiff was advised that orthopedists were not on call in the ER to do manipulations and that he would need to find one on an outpatient basis. He was diagnosed with low back pain and discharged. (Tr. 299-301.)

**ALJ Hearing**

Plaintiff appeared and testified to the following at a hearing conducted by an ALJ on April 4, 2012. He completed the 11th grade and obtained his GED in 2002 or 2003. He lives in a one story home with his three youngest children, ages 12 through 16, and his wife who is disabled. He and his wife have six children between the two of them. He is five feet eleven inches tall and weighs a little over 230 pounds. He was involved in a car accident when he was five years old and has had back problems since although his condition has worsened considerably over the past ten years. He cannot work because of pain when bending over and muscle spasms. His right leg feels like it is on fire all of the time. His lower back pain feels like a dull toothache. He rated his daily pain as 2 or 3/10. (Tr. 23-35.)

He sees Dr. Blachar, a pain specialist, every three months or more frequently as needed. At the time of the hearing, he was using a Duragesic patch and taking Roxicodone, muscle relaxants, and Amitriptyline, an antidepressant. His back pain is aggravated by bending over and sitting or riding in a car. He feels most comfortable lying down. His doctor recommends exercise which he does at home. He is limited to lifting 0-10 pounds. Lifting or pulling aggravates his back pain. Lifting a gallon of milk causes him pain. It is difficult for him to bend over to pull up the toilet seat. His medications cause him to become emotional, forgetful, and have difficulty thinking clearly. He uses a small electric neurostimulator on his back at night. He sleeps only two or three hours at a

time. He cannot work primarily due to his leg, back, and recent hip problem. He has difficulty with talking and thinking clearly on a daily basis. He has had difficulty sleeping for years and spends 99% of his time in bed as he has done long before he applied for disability. He has difficulty getting dressed and using the bathroom because it requires him to bend over. His children do all of the housework. On a good day, he can prepare oatmeal, go to the restroom, and take a shower. He can walk 50 to 100 feet, maybe half a block. He can watch TV but falls asleep during commercials. He has missed many of his children's activities due to his pain. He has difficulty with balance. He has more bad days than good and has couple of good days per month. (Tr. 36-52.)

Francis McGrowski, Ph.D., vocational expert (VE), also testified to the following at the hearing. Plaintiff's past work as a car detailer and coffee sales person were generally performed at the medium exertional level. The ALJ asked the VE whether a hypothetical individual with plaintiff's RFC, but who was also limited to simple instructions, could perform any jobs existing in significant numbers in the national economy. The VE testified that such a person could perform the representative occupations of parking lot cashier, order caller, and contribution solicitor.

The VE testified that the same hypothetical individual would not be able to work if he was off task for an average of 20% of the workday. The VE testified that if a hypothetical individual would not be able to work if he was absent 9 to 12 workdays per month due to their impairments. The same hypothetical individual would be unable to sustain substantial gainful work if he needed to rest between 4 to 5 hours in an 8-hour workday. (Tr. 52-58.)

**Decision of the ALJ**

On May 31, 2012, the ALJ issued a decision finding that plaintiff was not disabled under the Act. The ALJ found that plaintiff had the severe impairments of degenerative disc disease and obesity. The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments. The ALJ found that plaintiff had the RFC to perform light work as defined except that plaintiff could only occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolding. The ALJ found that plaintiff could frequently balance, but only occasionally stoop, kneel, crouch, or crawl. (Tr. 10-11.)

The ALJ gave little weigh to the opinion of plaintiff's pain management physician, Dr. Blachar, stating that his allegations were not supported by his own treatment notes or the objective evidence. The ALJ also gave little weight to the opinion of Dr. Koopman because his opinions appeared to be primarily based upon the plaintiff's subjective complaints. (Tr. 13.)

### IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); see also Bowen

v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his condition meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 416.920(a)(4)(v).

## V. DISCUSSION

Plaintiff argues that the ALJ erred in rejecting the opinion of treating physicians Drs. Blachar and Koopman and in failing to provide a basis for his RFC. He argues the ALJ should have given both doctors' opinions controlling weight because they are based on objective observations and signs. He argues that the ALJ erred in forming his own opinion of the medical evidence, instead of relying on the interpretation of his treating sources, and in providing no specifics or explanation for his conclusions that the doctors' opinions were not supported by the evidence. In support, he notes that there are no conflicts among treating medical sources and in fact there are supportive findings from several medical sources. He argues that the ALJ's assessment of plaintiff's ability to work amounted to medical conjecture.

RFC is a medical question and the ALJ's determination of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448,

451 (8th Cir. 2000). RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations. Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. An "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (1996).

Here, the ALJ determined that plaintiff had the severe impairments of degenerative disc disease and obesity. The ALJ determined that plaintiff had the RFC to perform light work as defined in the regulations. See 20 C.F.R. § 416.967(c). The ALJ found that plaintiff could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He found plaintiff could frequently balance, but only occasionally stoop, kneel, crouch, or crawl.

The ALJ's determination of plaintiff's RFC reflected his conclusion that plaintiff's self-described limitations were not entirely credible. The ALJ stated in his decision that he found plaintiff's complaints not credible for several reasons. Specifically, plaintiff made inconsistent statements concerning his level of pain, his limitations, his medication side effects, and his work activity. (Tr. 12-15, 277, 279.) Plaintiff's daily activities included assisting his disabled wife and three children, preparing very simple meals, bathing and performing personal hygiene, grocery shopping, and riding to the hearing for an hour and a half without difficulty. (Tr. 12, 15, 28-29, 30, 43-44, 47, 72, 200-03.) Plaintiff reported to his doctors that his pain medications generally worked and that his pain was only at a level 2-3/10 on most occasions. (Tr. 12, 253, 255, 257, 279, 304, 306, 308, 310, 312.) The objective evidence, including imaging studies, showed only mild abnormalities and mostly normal examination findings. (Tr. 11, 13, 230, 244, 253, 255, 257, 280, 283, 291, 299-300, 304, 306, 308, 310, 312. )

Plaintiff does not dispute the ALJ's conclusions regarding his credibility. Despite finding plaintiff's allegations to be less than fully credible, the ALJ credited the portions he found to be consistent with the record evidence. For example, the ALJ's finding that plaintiff could perform light work, which generally involves lifting up to twenty pounds occasionally, is consistent with plaintiff's report to Dr. Jeffries that he could lift light to medium weights. (Tr. 277.) Light work also involves sitting up to six hours a day and standing or walking for up to a total of six hours a day. See 20 C.F.R. § 416.967(c). The ALJ's finding that plaintiff could sit for up to six hours is supported by plaintiff's statement that he was able to travel approximately an hour and a half in the car, at times driving, without difficulty from pain. (Tr. 29-30.) Moreover, the ALJ's finding that plaintiff could stand or walk for up to six hours is supported by plaintiff's examinations, which revealed normal leg strength and normal gait on most occasions. (Tr. 244, 253, 255, 280, 287, 291, 299-300, 301, 304, 306, 308, 310, 312.) This is also supported by plaintiff's statements to his doctors that he did better walking than sitting and also by his daily activities, which included shopping and preparing simple meals. (Tr. 200-03, 288.)

The ALJ's RFC assessment also reflected the ALJ's evaluation of the medical opinions. Opinions from medical sources who have treated a claimant typically receive more weight than opinions from one-time examiners or non-examining sources. See 20 C.F.R. § 416.927(c)(1)-(2). However, the rule is not absolute; a treating physician's opinion may be disregarded in favor of other opinions if it does not find support in the record. See Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007). Likewise, an ALJ may appropriately rely on non-examining opinions as part of his RFC analysis. See Hacker v. Barnhart, 459 F.3d 934, 935, 939 (8th Cir. 2006) (ALJ's RFC assessment was supported by substantial evidence, including the opinions from non-examining doctors). Ultimately, it is up to the ALJ to determine the weight each medical opinion is due. See Id., 459 F.3d at 936 (ALJ's task is to resolve conflicts in the evidence).

Here, the ALJ considered the opinion of Dr. Blachar, plaintiff's pain management doctor. (Tr. 12.) Although Dr. Blachar is a treating doctor, the ALJ gave Dr. Blachar's

opinion little weight for several reasons. The ALJ noted that Dr. Blachar's opinion that plaintiff could not lift more than ten pounds, stoop, climb, or balance was inconsistent with his own treatment notes in which he repeatedly stated that plaintiff had normal strength and appeared in no apparent distress. (Tr. 12, 253, 255, 257, 304, 306, 308, 310, 312.) See e.g., Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (ALJ may discount a treating source's opinion when it is inconsistent with the source's own treatment notes; ALJ could properly discount therapist's RFC when contemporaneous treatment notes showed that claimant had "improved" and was "fair").

The ALJ also discounted Dr. Blachar's opinion because it appeared to be based on plaintiff's subjective complaints. (Tr. 12). See Gonzales v. Barnhart, 465 F.3d 890, 896 (8th Cir. 2006) (ALJ could give less weight to a medical opinion because it appeared to be based solely on the claimant's subjective complaints). Dr. Blachar believed that plaintiff would have excessive absences from work "because of his pain complaints," suggesting that his opinion was based on plaintiff's allegations of pain. (Tr. 12, 272). As set forth above, the ALJ found plaintiff's pain complaints to be less than fully credible for several good reasons and was therefore justified in discounting Dr. Blachar's opinion in this regard.

Finally, the ALJ discounted Dr. Blachar's opinion because it was not supported by the objective evidence. (Tr. 13.) "While the opinion of a treating physician is entitled to substantial weight, it is not conclusive because the record must be evaluated as a whole." Howe v. Astrue, 499 F.3d 835, 839 (8th Cir. 2007). The ALJ in this case noted plaintiff's imaging studies, which showed only a small disc protrusion and "minimal" spondylolisthesis. (Tr. 12, 244, 280.) The ALJ also noted that other physical examinations did not reveal abnormalities that would support Dr. Blachar's extreme limitations. (Tr. 12.) For example, Dr. Jeffries found plaintiff to have a normal gait and that he could toe, heel, and tandem walk and also stand on one leg. (Tr. 12, 230.) While plaintiff had reduced ROM, Dr. Jeffries noted that plaintiff had no dramatic tenderness or

muscle spasm, full motor strength, normal reflexes, and intact sensation. A sitting root test or straight leg raise was also negative. (Tr. 12, 280.)

Likewise, when Dr. Tiede examined plaintiff, he found no overt pathological pain behavior. While plaintiff changed positions slowly and had trouble bending, he had no tenderness in his lower back, normal reflexes, intact sensation, and no strength deficits. He also had negative straight leg raises. (Tr. 244.) Examination in the ER in March 2012 revealed a normal ROM in plaintiff's back, normal strength, and normal sensation. Plaintiff was able to walk without difficulty and had no tenderness in his back. (Tr. 301.) This evidence conflicts with Dr. Blachar's opinion that plaintiff experienced constant numbness. (Tr. 273.) Accordingly, the ALJ did not err in discounting Dr. Blachar's opinion because it conflicted with the other record evidence.

The ALJ also gave little weight to the opinion of Dr. Koopman, plaintiff's PCP, in making his RFC finding. The ALJ considered Dr. Koopman's letter and his MSS, but gave them little weight, citing several reasons. First, the ALJ found Dr. Koopman's own treatment notes did not reveal findings as to justify severe limitations, such that plaintiff could only stand or walk for two hours total and do no sustained sitting. (Tr. 13, 285). The ALJ noted that Dr. Koopman's records showed plaintiff was generally doing well. In August 2010, Dr. Koopman examined plaintiff and found only some tenderness and mild muscle spasm in his lower back, but good ROM. (Tr. 13, 230.) At his next appointment in December 2011, plaintiff again had some tenderness, but good ROM. (Tr. 283.) In February 2012, plaintiff had some reduced ROM and muscle spasm, but was able to heel and toe walk. (Tr. 291.) Dr. Koopman's notes do not show extreme limitations or support his opinion that plaintiff could hardly walk or sit.

The ALJ also gave little weight to Dr. Koopman's opinion because it was based on plaintiff's less than credible subjective complaints. Here, Dr. Koopman specifically stated that he based his opinion on plaintiff's own reports of his symptoms. (Tr. 13, 292.) Because the ALJ found plaintiff's description of his symptoms was not credible, the ALJ was justified in discounting Dr. Koopman's opinion.

Finally, the ALJ noted that Dr. Koopman's opinion was not consistent with the objective evidence or plaintiff's own testimony. (Tr. 13.) Although Dr. Koopman opined that plaintiff experienced constant numbness, the ALJ noted that the record evidence consistently showed plaintiff had normal sensation. (Tr. 13, 244, 280, 285, 301.) Nor did plaintiff complain of any numbness at the hearing. (Tr. 13, 27-61.) Additionally, Dr. Koopman's belief that plaintiff could do no sustained sitting conflicted with plaintiff's testimony that he was able to sit in a car for approximately one and a half hours without any difficulty. (Tr. 30.)

The undersigned concludes that the ALJ properly determined that the opinions of Drs. Blachar and Koopman were not entitled to controlling weight. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010) (while a treating physician's opinion is generally entitled to substantial weight such an opinion does not automatically control in the face of other credible evidence on the record that detracts from that opinion). Here, the ALJ considered all of the record evidence and provided good reasons for giving little weight to the opinions of Drs. Blachar and Koopman. (Tr. 11-15.) Plaintiff did not cite any record evidence that the ALJ failed to consider or that would cause the ALJ's decision to be unsupported by substantial evidence. See 20 C.F.R. § 416.927. Accordingly, the undersigned concludes the ALJ's analysis of the medical opinions is supported by substantial evidence.

Plaintiff finally contends that the ALJ improperly substituted his own opinion for that of Drs. Blachar and Koopman. The undersigned disagrees. Assessing RFC is the ALJ's responsibility and in doing so, the ALJ must consider all of the evidence in the record, not just the medical opinions. 20 C.F.R. § 416.927. The ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of the claimant's physicians. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). The court concludes that the ALJ properly evaluated all of the evidence and his analysis is supported by substantial evidence.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.


                                    /S/   David D. Noce  
                                    **UNITED STATES MAGISTRATE JUDGE**

Signed on  June 27, 2014